## Case No. 15,449.

### UNITED STATES v. The ISLA DE CUBA.

[2 Spr. 26.] [1]

District Court, D. Massachusetts. March, 1860. [2]

SLAVE TRADE—FORFEITURE OF VESSEL.

Circumstances which justify the forfeiture of a vessel under the act of 1818, c. 91 [3 Stat. 450], for being engaged in the slave-trade.

This was an information against the bark for having been fitted out, and caused to be sent to procure negroes from one foreign country to be transported to another foreign country, there to be held or otherwise disposed of. The libel was brought under the act of 1818, c. 91 (3 Stat. 450). George W. Ray claimed as mortgagee, and I. S. Correa as owner of the cargo. There was no appearance for the owner of the bark. The government contended that the law of informations in the instance courts differed absolutely from the law of criminal trials; that there was no presumption of innocence constantly recurring, and that a prima facie case was all that was required in a proceeding in rem to make a presumption in favor of the seizure; that the burden of proof then shifted to the defendant, who must by plenary proof establish the innocence of the rem.

C. L. Woodbury. Dist. Atty., and J. P. Woodbury, for the United States.

Sohier & Welch, for claimants.

1 [Reported by John Lathrop, Esq., and here reprinted by permission.]
2 [Affirmed in Case No. 15,447.]

SPRAGUE, District Judge, reviewed all the evidence in the case, and declared the vessel forfeited. The decision was based on the facts that the master left the vessel, and gave her up to his mate, his instructions to him at the time; that he was at the time owner, and his not appearing at this trial to claim her, while the mortgagee and owner of the cargo did appear; the expressions and acts of Correa, when he was told by the mate that he was going to take the ship to New York, because the vessel was engaged in the slave-trade; the fact of her being mortgaged for $6,000, and appraised at $3,000; the fact of Dobson, the owner, allowing Ray to charter her to Correa, and take her beyond his reach, and his want of interest in her destination, cargo, or passengers, and want of diligence in protecting his property from any illegal voyage, and the inconsistencies between the charter-party and manifest, the vessel by the latter being bound to a port five degrees outside of the limits of the former; that the cargo also indicated her purpose.—fifteen thousand gallons of water, over which were placed boards five or six feet deep, forming a deck or platform, upon which slaves could be seated, rice, fifteen barrels of salt, two of vinegar, a box of iron rods, muskets and cutlasses,—all adapted to this kind of trade. These, the court said, required explanation; and the explanation offered as to the water casks, that they were taken out to be filled with palm-oil and returned, is contradicted, or rendered of no force, by the testimony of Salem and Boston merchants, that there is no such custom, and the government show that there is no palm-oil at Loango, the place mentioned in the manifest. And if the boards were used as dunnage, the space is unnecessarily large, as all the goods carried out would not cover half the space. The box of iron rods, not on the manifest, was described as being instrumentalities by which the hold could be made a prison of without excluding the air, and not such things as would be used in any fair commerical enterprise. The medicine boxes were also admirably adapted to the slave trade. Some boilers were also found on board, well suited to prepare food for large numbers, and implements for taking it out. Two crates of mugs, for which there is no trade at the destined ports, were well adapted to slaves as a cargo. Though a small cargo, yet it required three different berths in New York to load at. These things remained unexplained, and some of them at least were inconsistent with an innocent voyage.

The judge thought the evidence conclusive; and was entirely satisfied, both from the testimony of the government and the failure of the claimants to explain it, that the decree, as above, should be entered.

[Upon an appeal to the circuit court, the decree of this court was affirmed, with costs. Case No. 15,447. For a subsequent proceeding, see Id. 15,448.]